**Affirmed in Part; Reversed and Remanded in Part; and Memorandum Opinion filed October 11, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00840-CV

---

## RH WHITE OAK, L.L.C., BRIAN HARDY, COLIN ZAK, ENTEX PARTNERS, LTD. AND ENTEX MANAGEMENT SERVICES, L.L.C., Appellants

### V.

## LONE STAR BANK AND RICKY JAMES HAJDIK, Appellees

---

On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2010-81470

---

## M E M O R A N D U M   O P I N I O N

These parties have been before this court in two prior original proceedings. RH White Oak, L.L.C., Brian Hardy, Colin Zak, Entex Partners, Ltd., and Entex Management Services, L.L.C., (collectively "Entex") previously sought mandamus relief for two sanctions orders signed by the Honorable Kyle Carter, presiding judge

of the 125th District Court of Harris County. *See In re RH White Oak, LLC*, 442 S.W.3d 492 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) ("*White Oak I*"); *In re RH White Oak, LLC*, No. 14-15-00789-CV, 2016 WL 3213411, at *1 (Tex. App.—Houston [14th Dist.] June 9, 2016, orig. proceeding) ("*White Oak II*"). In *White Oak I*, we conditionally granted the petition, in part, as to evidentiary sanctions and denied it, in part, as to monetary sanctions. *White Oak I*, 442 S.W.3d at 504. In *White Oak II*, we again conditionally granted the petition, in part, as to evidentiary sanctions, and denied it, in part. *White Oak II*, 2016 WL 3213411, at *9.

On April 4, 2016, the trial court signed a second order that reformed the order granting sanctions for discovery abuse. Subsequently, the trial court signed a final judgment in favor of Lone Star Bank and Ricky James Hajdik ("appellees") and this appeal ensued.

For the reasons stated below, we reverse the trial court's award of attorney's fees to Lone Star on their claim for recovery of debt. In all other respects, the judgment is affirmed.

## I.    Background

On September 30, 2008, Entex executed a note and other related documents for a construction loan from Lone Star Bank. On October 6, 2008, a letter, purportedly signed by Colin Zak and Brian Hardy, was presented to loan officer Ricky James Hajdik, authorizing J.R. Reuther of Reuther Homes, L.L.C., to make draws on behalf RH White Oak. The October 6, 2008 letter states:

> Please accept this letter as my authorization to allow JR Reuther of Reuther Homes to make draw requests on behalf of RH White Oak, LLC for the construction/development of the aforementioned project. This shall pertain to both construction and soft cost draw requests.
>
> It is my understanding that draws are paid per the Bank mandated Draw Schedule upon completion of each construction phase.

2

> I also authorize for all draws approved by the bank inspector to be funded into the bank account of Reuther Homes.
>
> I further understand that Lone Star Bank will require lien waivers/affidavits of bill[s] paid once each draw has been funded.

Entex defaulted on the note and a non-judicial foreclosure sale was held on January 4, 2011. Lone Star sued Entex for the remaining balance of the note, interest, and attorney's fees.

Entex filed counterclaims against Lone Star for fraud in a real estate transaction, common law fraud, DTPA violations, breach of contract, constructive trust, equitable lien, declaratory judgment, and attorney's fees. Entex alleged Reuther's withdrawals were unauthorized because Zak's and Hardy's signatures on the October 6, 2008 letter presented to Lone Star had been forged. Entex also filed a third-party petition against Hajdik, alleging claims for fraud in a real estate transaction, common law fraud, breach of fiduciary duty, conspiracy, and attorney's fees. Appellees subsequently obtained a copy of the October 6, 2008 letter with Zak's and Hardy's genuine signatures from Reuther in response to a subpoena.

The trial court signed a twenty-three-page sanctions order on October 25, 2013, finding that Entex had the October 6, 2008 letter with genuine signatures in their possession but deliberately failed to produce it. Pursuant to the order, Entex was prohibited from introducing any contrary evidence, conducting further discovery, filing further pleadings, and introducing evidence of their claims and defenses against appellees. The trial court also awarded appellees attorney's fees and monetary sanctions.

Entex filed an original proceeding in this court. We held that there was no direct relationship between Entex's failure to produce the October 6, 2008 letter with their genuine signature and foreclosing their claims and defenses. *White Oak I,* 442 S.W.3d at 502–03. Subsequent to our opinion, appellees and Entex filed their

respective motions to reform the October 25, 2013 order. The trial court held a hearing and signed the reformed sanctions order on August 10, 2015.

The reformed forty-six-page sanctions order was based on "Concealed Documents," which Entex did not produce, consisting of not only the October 6, 2008 letter with the genuine signatures but also a wire transfer agreement with genuine signatures, a wire transfer form with genuine signatures, and emails concerning the authorization of Reuther to make draws. The order made thirty-five fact findings that prohibited Entex from introducing any evidence to the contrary to inoculate the jury regarding those facts. The order further reassessed the same monetary sanctions as in the October 25, 2013 order.

Entex brought a second petition for writ of mandamus asserting that the August 10, 2015 order suffered from many of the same deficiencies as the October 25, 2013 order. We held the trial court abused its discretion as to some of the findings in its August 10, 2015 sanctions order and ordered the trial court to vacate those portions of its order. We denied the remainder of the petition. Following issuance of our opinion, the trial court signed the second reformed sanctions order on April 4, 2016. The April 4, 2016 sanctions order omitted the findings we held constituted an abuse of discretion. In all other respects, it is unchanged from the August 10, 2015 order.

On May 18, 2016, both Lone Star and Hajdik filed motions for traditional and no-evidence summary judgment. Entex filed a single response to both motions on June 24, 2016. Lone Star and Hajdik filed a joint motion to strike that response and objections to the evidence attached to that response on July 1, 2016. The trial court entered a final judgment on September 16, 2016 granting the joint motion to strike, sustaining all objections, and ordering Entex take nothing against Lone Star or Hajdik. Further, judgment was granted in favor of Lone Star and damages and

4

attorneys' fees awarded. In accordance with the April 4, 2016 sanctions order, judgment was entered in favor of Lone Star and Hajdik. All relief not expressly granted was denied. Entex now appeals the April 4, 2016 sanctions order and the final judgment.

Before we consider Entex's challenges to the order and the judgment, we first address whether the law-of-the-case doctrine applies. Entex argues it does not because the standard of review in a mandamus proceeding is different.

We agree that the doctrine does not apply in cases where the appeal involves a different standard of review than the prior proceeding. Whether challenged by appeal or writ of mandamus, we will set aside discovery sanctions imposed by a trial court only if the court clearly abused its discretion. *See* Tex. R. Civ. P. 215; *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *In re Zenergy, Inc.*, 968 S.W.2d 1, 9 (Tex. App.—Corpus Christi 1997, no pet.). Thus the standard of review is the same as to the sanctions order.

The ruling of an appellate court on a question of law will be regarded as the law of the case in all subsequent proceedings unless clearly erroneous. *In re Prudential Sec., Inc.*, 159 S.W.3d 279 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003)). The law-of-the-case doctrine applies if the issues of law and fact are substantially the same in the second proceeding as the first. *Id.* (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). The law-of-the-case doctrine may be applicable to an appeal arising after the denial of a writ of mandamus. *See In re L.R.*, 416 S.W.3d 675, 677 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (declining to apply the law-of-the-case doctrine when denial of the mother's mandamus petition did not comment on the merits).

In the case before us, the facts have not changed. Therefore, the law-of-the-case doctrine applies to any legal issues raised in Entex's appeal from the sanctions order that are substantially the same as those previously considered.

Regarding the summary judgment, we recognize a different standard of review applies. *See Hudson*, 711 S.W.2d at 630 (declining to apply the law-of-the-case doctrine in the second appeal from a trial on the merits when the first appeal was from a summary judgment); *Flying Diamond-W. Madisonville L.P. v. GW Petroleum, Inc.,* No. 10-07-00281-CV, 2009 WL 2707405, at *13–14 (Tex. App.—Waco Aug. 26, 2009, no pet.) (same).

## II.     The Sanctions Order

A.     *Is there legally sufficient evidence to support the trial court's finding of fact?*

In its brief, Entex refers this court by record reference to the trial court's following findings:

- The Concealed Documents have been in [Entex's] possession, custody or control, and at a minimum, in their constructive possession (having been found in the possession of their agent, Reuther), since before this suit was filed; and

- [Entex] did not produce any of the Concealed Documents; lied about the existence of all of the Concealed Documents; and lied about signing them, claiming the signatures on the Concealed Documents were forged.

Entex admits that Zak's testimony would support the trial court's finding but argues it would support an equal and opposing "inference" — namely that Reuther's production of the October l6, 2008 letter ("October letter") and emails in 2013 is sufficiently suspicious to doubt their authenticity. Entex contends there is no direct evidence to support the authenticity of the letter with Zak's and Hardy's genuine signature.

6

In *White Oak I¸* Entex asserted that appellees did not meet their burden at the sanctions hearing to establish that the October letter had Zak's and Hardy's genuine signatures or that they had the letter in their possession, *i.e.,* the sanctionable conduct. We stated:

> The evidence at the October 7, 2013 hearing showed there was a version of the October 6, 2008 letter with Zak's and Hardy's genuine signatures, as determined by a forensic document expert, and such letter was not produced until Reuther did so pursuant to a trial subpoena. An email sent from Zak's email account showed that he was sending the signed letter to Reuther. Zak and Hardy had not referenced or mentioned the letter with their real signatures in prior affidavits and deposition testimony, and moreover they claimed that they were not aware of any October 6, 2008 letter with their genuine signatures. Zak testified at the hearing that he did not recall seeing the letter with his and Hardy's real signatures, but if it had been in his possession, he would have given it to his attorney.
>
> There is circumstantial evidence showing that relators had actually signed a copy of the October 6, 2008 letter but later denied its existence and failed to produce it, which is sufficient to support a finding of sanctionable conduct.

*White Oak I,* 442 S.W.3d at 500 (citing *Global Servcs., Inc. v. Bianchi*, 901 S.W.2d 934, 938 (Tex. 1995)).

Findings of fact made by a trial court in support of its sanctions order are not treated on appeal as findings made under Rule 296, which are reviewable for legal and factual sufficiency. Tex. R. Civ. P. 296; *Mills v. Ghilain*, 68 S.W.3d 141, 145 (Tex. App.—Corpus Christi 2001, no pet.) (citing *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997)). Instead, findings made by the trial court following imposition of sanctions are used only to assist the reviewing court in determining whether an abuse of discretion has occurred. *Mills*, 68 S.W.3d at 145. We have previously reviewed the challenged finding and determined the trial court

acted within its discretion in finding sanctionable conduct. Under the law of the case, we overrule Entex's issue.

B.      *Can the trial court's deemed finding withstand the scrutiny required?*

Entex makes no reference to the record identifying the "deemed finding." Entex provides, as an example, "the trial court's findings that Entex intentionally destroyed or concealed material evidence," which it argues "are functionally identical to a finding of spoliation."[1] It is not our duty to review the record, research the law, and then fashion a legal argument for Entex when they have failed to do so. *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Briefing waiver occurs when a party fails to make proper citations to authority or to the record, or to provide any substantive legal analysis. *See* Tex. R. App. P. 38.1(i); *Canton–Carter,* 271 S.W.3d at 931; *Sterling v. Alexander*, 99 S.W.3d 793, 798–99 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Even though the courts are to interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Accordingly, the issue is overruled.

C.      *Do the trial court's non-monetary sanctions fail the TransAmerican test?*

Entex next contends the trial court's non-monetary sanctions are not "just" in accordance with *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991). In *White Oak II,* 2016 WL 3213411, at *5-9,  we applied the two-part test set forth in *TransAmerican* and upheld the sanctions that are contained in the April 4,

---

[1] However, Entex concedes "this is not a pure spoliation case" because the documents are available.

2016 order. In accordance with the law of the case, this issue is overruled.

D.    *Are the monetary sanctions excessive and unjust under CHRISTUS?*

This issue was not previously addressed in either *White Oak I* or *II*. In *White Oak I*, we concluded Entex had not shown they lacked an adequate remedy by appeal of the monetary sanctions portion of the order. 442 S.W.3d at 504 (citing *In re Christus Health*, 276 S.W.3d 708, 709 n. 2 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding [mand. denied] ) (holding relators did not contend that they had no adequate remedy by appeal as to monetary sanctions in mandamus petition because they contended only such sanctions were an abuse of discretion)). In *White Oak II*, Entex argued the death penalty sanctions were excessive in light of the monetary sanctions assessed. 2016 WL 3213411, at \*9. Because that argument had not previously been presented to the trial court, we did not consider it. *Id.* (citing *In re Advance Payroll Funding, Ltd.*, 254 S.W.3d 710, 714 (Tex. App.—Dallas 2008, orig. proceeding) ("Neither of these arguments were presented to the trial court. It is well established that arguments not presented to the trial court will not be considered in a petition for writ of mandamus.")). Thus the issue raised on appeal is not controlled by the law of the case.

In this issue, Entex challenges both the awards of attorney's fees as sanctions and the awards of punitive sanctions. As noted above, the trial court awarded $275,000 for attorney's fees as sanctions to Lone Star and $185,756.44 for attorney's fees as sanctions to Hajdik. The trial court also awarded monetary sanctions as punishment —$95,744 to Lone Star and $25,000 to Hajdik. Entex argues that neither Lone Star nor Hajdik presented sufficient evidence, as required by *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 539–40 (Tex. 2016), to support these awards.

Specifically, Entex contends:

- The attorneys' "estimates of the total fees of the case are legally insufficient;"
- The trial court was required to explain its rationale for the amount imposed;
- Lone Star and Hajdik were required to provide sufficient evidence to explain the relationship between the sanctions and the complained-of conduct; and
- The total fees charged by counsel for Lone Star and Hajdik "from the inception of the case" are not recoverable as sanctions for the alleged misconduct in this case.

Further, Entex argues the awards of punitive sanctions are excessive because there is no evidence "of the alleged expenses incurred in connection with these punitive sanctions and how they resulted from or were caused by the sanctionable conduct."

At the sanctions hearing, Lone Star's attorney, Ted Walker, argued that attorney's fees for a case such as this would normally be about $25,000 to $30,000. In this case, the fees were $300,000 as of August 2013. Walker asked the trial court to award the difference as sanctions. The crux of Walker's position was that Zak's and Hardy's denial that they authorized Reuther to make draws on behalf of RH White Oak forced Lone Star to incur an additional $270,000 to $275,000 in attorney's fees. Hajdik's attorney, Thomas Leibowitz, argued Zak's and Hardy's claims against Hajdik were groundless in light of Reuther's having been authorized to make draws. Thus, all of Hajdik's attorney's fees were recoverable as sanctions.

Walker testified that Lone Star had incurred fees totaling $308,070.27. According to Walker, the core of all of Entex's counterclaims was whether or not Reuther was authorized to make the draws. The fees that would have been occurred but for the claim that the draws were not authorized were approximately $25,000 to

$30,000. Because that claim was false, Lone Star was entitled to attorney's fees in excess of that amount. Liebowitz testified that Hajdik's legal expenses totaled $185,756.44. According to Liebowitz, Hajdik was entitled to all his attorney's fees because he was wrongfully brought into the suit. Walker offered thirty-seven exhibits into evidence in support of his testimony. Leibowitz offered nineteen. All the exhibits were admitted into evidence.[2] Thus, the record before this court contains evidence of attorney's fees for both Walker and Leibowitz. Both Walker and Liebowitz testified that the amount of fees testified to were incurred as of the date of the hearing. The trial court's rationale for the amount awarded was as follows:

> Defendants' perjury and misconduct have needlessly and tremendously increased the cost of this litigation. Lone Star Bank and Hajdik have incurred substantial attorney's fees dealing with and defending against Defendants' false claims and allegations, many of which have been supported only by Defendants' perjury and misconduct, beginning with Defendants' first responses to Lone Star Bank's written, discovery in April, 2011 lasting through Zak's and Hardy's second depositions in July, 2013 and Defendants' Response to the Motions for Sanctions. Accordingly, a direct relationship exists between Defendants, their perjury/misconduct and a substantial monetary award to Lone Star and Hajdik for attorney's fees as sanctions against Defendants because a large portion of attorney time and fees incurred by Lone Star and Hajdik are directly related to Defendants' perjury and misconduct. Accordingly, the Court will impose monetary sanctions for attorney's fees. Tex. R. Civ. P. 215.2(b)(8); 215.3.

The trial court's order also details the discovery abuse at issue in this case. In awarding punitive monetary sanctions the trial court explained:

> The egregiousness and repetitiveness of Defendants' egregious perjury and misconduct exhibits Defendants' total disregard for and disrespect of the integrity of this Court and our judicial system. The Court finds that Defendants can pay monetary sanctions, if ordered by

---

[2] Entex opposed the admission of some of these exhibits but does not contest the trial court's decision to overrule those objections.

the Court. Again, Defendants' perjury and misconduct go to the heart of this case, is egregious, exceptional and exemplifies a pattern of misconduct and disregard for truth which is not to be tolerated. Additional monetary sanctions are just, appropriate and there is a direct relationship between the egregiousness and repetitiveness of Defendants', their [sic] perjury and misconduct and this sanction because this is an exceptional case of perjury and misconduct, not about failing to produce one document or one lie, but a mountain of evasiveness, lack of candor, concealment, numerous outright lies, and total disregard for truth, which is the foundation of our judicial system based on truth, rules and litigants' compliance with those rules. Accordingly, additional monetary sanctions are appropriate, just and not excessive. Tex. R. Civ. P. 215.2(b); 215.3.

The trial court noted that the amount of the monetary sanctions awarded to Lone Star represented one-half of the unpaid principal amount in controversy.

*CHRISTUS* requires the party seeking attorney's fees as sanctions to put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct. *CHRISTUS Health Gulf Coast*, 505 S.W.3d at 540 (citing *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 816–17 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). In that case, the Court affirmed the lower court's decision reversing and rendering judgment as to sanctions. *Id.* at 541. In *CHRISTUS,* the trial court gave no explanation of its rationale for imposing the single amount awarded as a monetary sanction and there was no evidence supporting the award of that amount as attorney's fees resulting from the sanctionable conduct. *Christus Health Gulf Coast v. Carswell*, 433 S.W.3d 585, 616 (Tex. App.—Houston [1st Dist.] 2013), *aff'd in part, rev'd in part*, 505 S.W.3d 528 (Tex. 2016). The court concluded "the trial court imposed an arbitrary monetary sanction against Christus in an amount that has no evidentiary support in the record." *Id.*

In the case at bar, as discussed above, there is evidentiary support in the record for the sanctions awarded. Lone Star and Hajdik submitted evidence that attorney's fees were incurred as a result of Entex's discovery abuse relating to Reuther's authorization to draw on the account. The trial court's awards to Lone Star and Hajdik for attorney's fees as sanctions were for the excess of what would have been incurred but for the sanctionable conduct. The trial court explained its rationale for the sanctions awarded as attorney's fees. Moreover, the trial court explained its rationale for imposing punitive monetary sanctions. Unlike *CHRISTUS,* there is evidentiary support for the trial court's ruling in the record before this court. Because Entex has not demonstrated the trial court abused its discretion, we overrule Entex's issue.

F.      *Are there serious factual errors in the trial court's findings?*

Entex contends the trial court's finding xix[3] is erroneous because Entex produced this document. Appellees do not contest the email was produced but instead argue the error was harmless.

The harmless error rule applies to all errors. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). Under Rule 44.1(a), as applicable to this case, the trial court's error is only reversible if it probably caused the rendition of an improper judgment.[4] Tex. R. App. P. 44.1(a)(1). It is the complaining party's burden to show harm on appeal. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009);

---

[3] Finding xix states, "On December 2, 2008, Defendants emailed Reuther expressing their desire to place the Project on hold and 'please advise all costs (soft or otherwise) associated with this project so far', and to 're-draft the letter to the Bank you had us sign allowing draws to be paid into the Reuther Homes account.' A direct nexus exists between Defendants, their perjury/misconduct and this sanction because this fact is proven by the Concealed Documents and evidence admitted at the October 7, 2013 hearing."

[4] Entex makes no claim, and the record does not reveal, they were probably prevented from properly presenting their case on appeal. *See* Tex. R. App P. 44.1(a)(2).

*Guniganti v. C & S Components Co., Ltd*., 467 S.W.3d 661, 666 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

While an erroneous finding of fact on an ultimate fact issue is harmful error, an immaterial finding of fact is harmless and not grounds for reversal. *Andrews v. Key*, 13 S.W. 640, 641 (Tex. 1890); *Cooke County Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.–Fort Worth 2004, no pet.); *see also Able v. Able*, 725 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). An ultimate fact issue, which a trial court is required to enter in its requested written findings of fact following a bench trial, is one that is essential to the cause of action and has a direct effect on the judgment. *In re Marriage of Edwards*, 79 S.W.3d 88, 94 (Tex. App.—Texarkana 2002, no pet.). An evidentiary issue, which a trial court is not required to enter in its requested written findings of fact following a bench trial, is one the court may consider in deciding the controlling issue, but is not controlling in itself. *Id.*

Entex makes no attempt to show that the erroneous finding that this email was *one* of the Concealed Documents was essential to the cause of action or had a direct effect on the judgment. Considering the sanctions order in its entirety, finding of fact xix is one the trial court might have considered in deciding the controlling issue, but it was not controlling in itself. Because Entex has not shown the trial court's error probably caused the rendition of an improper judgment, the issue is overruled.

### III.   The Judgment

Entex's brief also asserts error in the judgment. The trial court granted summary judgment in favor of Lone Star on its' claims for recovery of debt and associated attorney's fees. Further, the trial court granted summary judgment against Entex on all of its claims and affirmative defenses.

Lone Star filed suit against Entex for recovery of the amount remaining due on the note after foreclosure as well as attorney's fees. Entex filed counterclaims against Lone Star for common-law fraud/fraudulent inducement; (2) statutory fraud; (3) DTPA violations; (4) breach of contract; (5) constructive trust; (6) equitable lien; and (7) declaratory judgment. Entex sought damages, including exemplary damages and treble damages under the DTPA, as well as attorney's fees. Entex also filed counterclaims against Hajdik for (1) common-law fraud; (2) statutory fraud; (3) breach of fiduciary duty; and (4) conspiracy. Entex also sought the recovery of damages and attorney's fees from Hajdik. Lone Star moved for traditional summary judgment on its' claims against Entex, traditional and no-evidence summary judgment on all of Entex's claims, and no-evidence summary judgment on all of Entex's affirmative defenses.[5] Hajdik moved for no-evidence and traditional motion for summary judgment on all of Entex's claims against him.

Entex claims summary judgment was improper as it was based upon improper sanctions and the striking of its' summary-judgment response and attached evidence. Further, Entex asserts that its' summary-judgment response and evidence established that Lone Star and Hajdik were not entitled to summary judgment on the merits. Lastly, Entex argues the award of attorney's fees was improper. We first consider whether Entex's response and the attached evidence, had it not been stricken by the trial court, would have precluded summary judgment in favor of Lone Star and Hajdik.

---

[5] Those defenses are: novation; lack of consideration; standing; defect of parties; unclean hands; lack of excuse, mitigation, estoppel or waiver; alteration; offsets; negligence; attorney's fees/excessive demand; and Tex. Prop. Code § 51.003 (titled "Deficiency Judgment").

A.    *Summary Judgments*

Entex contends, in sixteen subparts, that its' summary judgment response and attached evidence raised fact issues on Lone Star's claims and on all of Entex's claims and defenses. However, Entex does not refer this court to any evidence in the record but only refers to the response itself.[6] Entex states its' arguments are "necessarily condensed to fit within the space permitted for this appellate brief"[7] and that "Entex provides record references to its summary judgment response where these arguments were stated at much greater length."

This court has repeatedly rejected similar attempts to incorporate by reference into an appellate brief the arguments and authorities from a summary-judgment response filed in the trial court. *See Equity Indus. Ltd. P'ship IV v. S. Worldwide Logistics, LLC*, No. 14-14-00750-CV, 2016 WL 1267848, at *2 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.) (holding appellant may not satisfy appellate rules requiring sufficient briefing by incorporating by reference argument and analysis presented in the trial); *Khan v. Safeco Surplus Lines,* No. 14–13–00024–CV, 2014 WL 3907976, at *5–6 (Tex. App.—Houston [14th Dist.] Aug. 12, 2014, pet. denied) (mem. op.) (holding that appellant's briefing was insufficient and not allowing appellant to incorporate by reference into his appellate brief argument and authorities from his summary-judgment response in the trial court); *Karaali v. Petroleum Wholesale, L.P.,* No. 14–11–00577–CV, 2013 WL 6198349, at *6 & n.11 (Tex. App.—Houston [14th Dist.] Nov. 26, 2013, no pet.) (mem. op.) (holding that appellant's briefing was insufficient and not allowing appellant to incorporate by reference into his appellate brief argument and authorities from a response filed in the trial court). The appellate rules require an

---

[6] Although appellees' brief protests this deficiency, Entex's reply brief does not address it.

[7] Entex did not file a motion to exceed the word limit. *See* Tex. R. App. P. 9.4(i)(2)(B).

appellant to file a brief in accordance with its provisions and that requirement is not satisfied by merely referencing this court to filings in the trial court. *See Equity Indus. Ltd. P'ship IV,* 2016 WL 1267848, at *2. As this court recognized in *Karaali*, 2013 WL 6198349, at *6 n.11, the rules of appellate procedure allow a party to adopt by reference another document filed in our court by another party. *See* Tex. R. App. P. 9.7 ("Any party may join in or adopt by reference all or any part of a brief, petition, response, motion, or other document *filed in an appellate court by another party* in the same case." (emphasis added)). This rule does not apply to a party's attempt to incorporate into a brief a response filed in the trial court by the same party. *See Karaali*, 2013 WL at *6 n.11. Were we to allow parties before this court to merely reference in their appellate brief a filing in the trial court as a stand-in for argument, analysis, and citation to the record, Rule 38.1 would be meaningless. *See* Tex. R. App. P. 38.1. This we decline to do.

The failure to provide citations to the record in a brief or to refer to summary-judgment evidence in a response results in the waiver on appeal of the contentions made. *See* Tex. R. App. P. 38.1(g)(requiring the appellant's brief to contain citations to the record in support of the contentions made); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (appellate court has discretion to waive error due to inadequate briefing). Accordingly, we overrule Entex's issues complaining of the trial court's grant of summary judgment in favor of Hajdik and Lone Star. It is therefore unnecessary to consider whether the summary judgment was based on improper sanctions or the trial court erred in striking Entex's response and attached evidence.

B.    *Attorney's Fees*

Lastly, Entex contends the trial court erred in awarding Lone Star attorney's fees in the amount of $573,544.29. For the reasons stated below, we agree.

17

Entex argues the award allows a double recovery of attorney's fees, Lone Star failed to segregate its' attorney's fees, and the trial court erred in striking Entex's controverting summary judgment affidavit on attorneys' fees. We first address Lone Star's contention that Entex has waived a challenge based on the failure to segregate because no such complaint was made in the trial court. The record reflects that Entex first objected to the failure to segregate in its' motion for new trial. We need not decide, however, whether Entex's objection was timely[8] as segregation was not called for in this case.

Attorney's fees must be authorized by statute or contract and a party presenting more than one claim in a single cause must segregate attorney's fees between recoverable and nonrecoverable claims. *See Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). If there is no objection to the fact that the attorney's fees are not segregated as to specific claims, the objection is waived. *Id*. If any attorneys' fees relate solely to a claim for which such fees are unrecoverable, the party seeking an award of attorneys' fees must segregate recoverable from unrecoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). In this case, Lone Star asserted only one claim against Entex—for recovery of debt. The fees Entex is now arguing should have been "segregated" are the attorney's fees awarded as sanctions and not attorney's fees for a claim for which such fees are unrecoverable. Entex's argument is a variation of its' assertion that Lone Star is recovering the same attorney's fees twice. We therefore conclude that Lone Star was under no obligation to segregate between attorney's fees for recoverable claims and attorney's fees for unrecoverable claims.

---

[8] *See Home Comfortable Supplies, Inc. v. Cooper,* 544 S.W.3d 899, 908–10 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (recognizing a split of authority on whether a fee-segregation complaint may be raised in a post-judgment motion).

Next, we consider whether the trial court erred in striking Paul Pilibosian's affidavit. Entex challenged Lone Star's motion for summary judgment on attorneys' fees with the affidavit of Entex's lead counsel, Pilibosian. Lone Star objected to Pilibosian's affidavit on various grounds, numbered 108 through 118. The trial court struck Pilibosian's affidavit in its entirety when it granted Lone Star's motion to strike all of Entex's summary judgment evidence. Lone Star contends Entex has waived any error in the striking of Pilibosian's affidavit because Entex fails to challenge all of its objections in Entex's opening brief. In its' reply brief, Entex counters that the issue raised on appeal is broad enough to preserve its appellate complaints.

Entex's opening brief contends the trial court erred by striking Pilibosian's affidavit. The statement of an issue is to be treated as covering every subsidiary question that is fairly included. *See* Tex. R. App. P. 38.1(f). Although the argument therein focuses on Objection No. 112, Lone Star's other objections are addressed in Entex's reply brief. While a reply brief may not raise a new *issue*, appellants are permitted to respond to arguments raised in an appellee's brief. *See Grace Interest, LLC v. Wallis State Bank,* 431 S.W.3d 110, 124 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (reciting the rule against adding new issues in a reply brief); Tex. R. App. 38.3 (permitting appellant to file a reply brief addressing any matter in the appellee's brief). Moreover, the issue of whether the trial court erred in striking Pilibosian's affidavit was fully briefed by appellees. *See Bennett v. Coghlan*, No. 01-04-00104-CV, 2007 WL 2332969, at *4 (Tex. App.—Houston [1st Dist.] Aug. 16, 2007, pet. denied) (considering issue raised for first time in reply brief because appellee fully briefed it in his response). In this case, where the *issue* was raised in the opening brief, even though all the possible arguments in support of that issue

were not, and where appellee briefed the issue, we decline to hold Entex has waived the issue.

In Objection No. 108, appellees claimed that Entex's response violated the "specificity rule" because it failed to refer to the affidavit. Citing *Walton v. City of Midland*, 24 S.W.3d 853, 858 (Tex. App.—El Paso 2000, no pet.), *abrogated by In re Estate of Swanson*, 130 S.W.3d 144 (Tex. App.—El Paso 2003, no pet.), Lone Star claimed in their objection that the specificity rule "precludes the admission of any evidence not specifically pointed out to the Court in the response." *Walton* does not support Lone Star's interpretation as that case did not involve the striking of an exhibit for failing to reference it. *See id.* Rather, the appellate court recognized that neither it, nor the trial court, were required to search the 500 pages attached to a response for evidence that would raise an issue of material fact on the element of causation. *Id.*

In the case at bar, Lone Star acknowledges in their brief that the trial court considered their objections as referring to Pilibosian's June 24, 2016 affidavit, as requested by appellees, which was attached to Entex's supplemental response to the motions for summary judgment, a six-page document in its entirety. We therefore conclude the trial court could not have properly stricken Pilibosian's affidavit on this basis.

Objection No.109 complains of the affidavit "to the extent any portion of it" violates the sanctions order and requested that the trial court strike the following: ". . . Defendants claim that Plaintiff improperly funded draws." Thus, we cannot conclude the trial court properly struck Pilibosian's entire affidavit on that basis. *See* L. *Ray Calhoun & Co. v. R.R. Salvage & Restoration, Inc*., No. 03-08-00198-CV, 2009 WL 280760, at *3 (Tex. App.—Austin Feb. 5, 2009, no pet.) (mem. op.)

20

(stating that it would not be proper to strike an entire affidavit where only portions of it were conclusory); *see also Ennis v. Loiseau,* 164 S.W.3d 698, 703–04 (Tex. App.—Austin 2005, no pet.) (upholding trial court's exclusion of only conclusory portions of special appearance affidavit).

In Objections No. 110 and 111, Lone Star objected "to the extent any portion" of the affidavit constituted parol evidence or hearsay. Lone Star did not identify any portion of the affidavit that was either and although appellees argued the validity of the objections above, no argument is made that these objections support the striking of Pilibosian's entire affidavit. Lone Star's other objections, numbered 113 through 118, seek to strike only portions of Pilibosian's affidavit. The objections are devoid of any reason to strike and no argument is made in support of them. Objections to the substance of an affidavit that are vague and overbroad and do not state a specific basis for objecting to a particular statement are insufficient. *See Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358–59 (Tex. App.—Dallas 2007, pet. denied); *Stewart v. Sanmina Tex., L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.). Accordingly, the trial court could not have properly stricken Pilibosian's entire affidavit based on these objections.

We turn now to Objection No. 112, which stated:

> ***Conclusory*** and ***Tex. R. Civ. P. 166a(c)*** and ***Tex. R. Evid. 705(c)***
>
> The Affidavit of Paul Pilibosian is conclusory and lacking evidentiary support. The testimony raises no genuine issue of material fact and fails to controvert any of Plaintiff's evidence. A conclusory statement is one which does not provide the underlying facts to support the conclusion. *See, e.g., Brookshire Katy Drainage Dist. v. Lily Gardens, LLC,* 333 S.W.3d 301, 308 (Tex. App.—Houston [1st] Dist.] 2010, pet denied). A conclusory statement in an affidavit is not sufficient to raise a fact issue or defeat a summary judgment. *See, e.g., Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996).

The Affidavit of Paul Pilibosian is not clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could be [sic] readily controverted. Tex. R. Civ. P. 166a(c).

A conclusory statement is one that expresses a factual inference without providing underlying facts in support of the conclusion. *See, e.g., Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 & n.21 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding affidavit's statement that "this was false and defamatory and has injured me in my profession" was conclusory). Conclusory affidavits are not proper summary judgment evidence. *See Padilla v. Metro. Transit Auth. of Harris Cty.*, 497 S.W.3d 78, 86 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Rule 166a(c) provides, in pertinent part, that "[a] summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c). Rule 705(c) states "[a]n expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion." Tex. R. Evid. 705. The question, therefore, is whether the trial court could have properly stricken Pilibosian's affidavit for failure to provide underlying facts in support of his conclusion that attorney's fees in the amount of $557,392.79 were not reasonable and necessary in the prosecution of appellees' case.

I have read the Affidavit of Ted Walker submitted in support of Plaintiff's request for attorneys' fees, in which Mr. Walker testifies that $557,392.79 are reasonable and necessary attorneys' fees incurred by Plaintiff in the prosecution of its case. I have also reviewed the fee statements produced by Mr. Walker in support of his fees. In my opinion $557,392.79 is not a reasonable amount of fees in this case nor

22

were the services performed by Plaintiff's attorney necessary. Specifically, Plaintiff resisted discovery in this case throughout, which resulted in Defendants having to file three motions to compel. In addition. Plaintiff's fees include appellate fees incurred defending against two sanctions orders that the Court of Appeals held were an abuse the discretion. Plaintiff drafted both orders, and the trial court signed both orders without modification, further, according to Plaintiff this entire case could have been resolved had Plaintiff obtained discovery from Mr. Reuther, which Plaintiff failed to do until approximately two years after this case had been on file. Because of Plaintiff's delays, this case has been delayed and both sides costs have increased, Plaintiff is now seeking fees caused by its own delays. This is not reasonable. In addition, in his original affidavit, Mr. Walker claimed that Plaintiff had spent $204,858.12 in fees. Since that time, Plaintiff has spent the majority of its lime attempting to uphold the trial court's sanctions orders that the Court of Appeals found to be an abuse of discretion. Further, this Court has already awarded Plaintiff attorneys' fees in excess of $230,000.00 along with additional monetary sanctions. Those fees were all of the fees Plaintiff claimed to have incurred as of the date of the original sanctions order. All of the other fees incurred by Plaintiff have related to upholding this order, which failed. Given that this is not a complex case and Plaintiff's alleged damages are under approximately $100,000.00, Plaintiffs fees are completely unreasonable. Plaintiff claims it is owed a deficiency . . . Given the basic nature of this case, it is unreasonable to charge a client $557,392.79 to prosecute this case.

Because Pilibosian's affidavit included facts to support his conclusion that Lone Star's fees and costs were not reasonable and necessary, we hold his affidavit is not conclusory and therefore was competent summary judgment evidence. *See Leonard v. Knight*, 551 S.W.3d 905, 911–12 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Accordingly, we sustain Entex's issue complaining of the trial court's ruling striking Pilibosian's affidavit. We do not address Entex's remaining arguments against the trial court's award of attorney's fees as they would afford no greater relief. *See Young v. Qualls*, 223 S.W.3d 312, 315 (Tex. 2007) (remanding to the trial court for a new trial on attorney's fees).

## IV. Conclusion

For the reasons set forth above, we reverse that portion of the judgment awarding $573,544.29 in attorney's fees; sever that portion of the judgment and remand the issue of attorney's fees awarded for Lone Star's suit on recovery of debt for further proceedings. *See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.,* 245 S.W.3d 488, 510 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). In all other respects, the judgment of the trial court is affirmed.


/s/ John Donovan
   Justice


Panel consists of Justices Christopher, Donovan and Jewell.

24